**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jim Cano, | ) | No. CV-05-0511-PHX-SRB |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Zurich American Insurance Company, | ) | |
| Defendant. | ) | |

This case concerns the interpretation of a workers' compensation insurance policy. Pending before this Court are Defendant Zurich American Insurance Company's Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56(b) (Doc. 65), and Defendant's Motion for Certification of Questions of Law to the Arizona Supreme Court, filed pursuant to Rule 27 of the Arizona Rules of the Supreme Court and A.R.S. §§ 12-861 *et seq*. (Doc. 94).

I.   **BACKGROUND[1]**

Defendant issued a workers' compensation and employer's liability insurance policy to Phelps Dodge Corporation ("Phelps Dodge"), effective April 1, 2002 to April 1, 2003. The named insured includes Phelps Dodge, its affiliates, and its approved contractors and subcontractors, one of which is Bowen Machine & Fabrication, Inc. ("Bowen"), Plaintiff Jim

---

[1]The following facts are undisputed except where otherwise noted.

1   Cano's employer.  On January 30, 2003, Plaintiff injured his knee while working for Bowen
2   at a Phelps Dodge mining site.  Plaintiff was carrying welding equipment up three flights of
3   stairs when his right knee "gave way" or "popped."  (Pl.'s Statement of Facts ("PSOF") ¶ 18.)

4   Bowen reported the accident to Defendant the day it occurred.  Defendant denied
5   Plaintiff's claim on February 12, 2003.  Plaintiff filed a claim with the Arizona Industrial
6   Commission ("Commission") on February 21, 2003.  Defendant accepted Plaintiff's claim
7   on May 18, 2003.

8   Plaintiff had surgery on his knee on July 22, 2003 to repair a torn meniscus.  Plaintiff,
9   who had no other health insurance, claims that because he had to wait several months for
10  Defendant to accept his claim and authorize the surgery, he developed a sympathetic nerve
11  disorder and pain syndrome called reflex sympathetic dystrophy ("RSD") for which he
12  continues to receive treatment.  (PSOF ¶¶ 94, 98, 102, 105, 107, 109-112.)

13  Plaintiff filed suit in January 2005 alleging that Defendant breached its duty of good
14  faith and fair dealing in the handling of his claim.  Plaintiff seeks compensatory damages,
15  punitive and exemplary damages, as well as fees and costs.

16  Plaintiff, Defendant, Bowen and Phelps Dodge eventually settled Plaintiff's workers'
17  compensation claim, and the Commission approved the settlement on October 13, 2005.
18  (Def.'s Statement of Facts ("DSOF"), Ex. 3 ("Settlement").)

19  Defendant filed the instant motion for summary judgment, asserting that because
20  Plaintiff is not a named insured or an assignee of the Zurich policy, Plaintiff cannot assert
21  a common law claim for bad faith.  (Def.'s Mot. for Summ. J. at 1.)  Alternatively, Defendant
22  moves for dismissal of Plaintiff's claim for income loss, mental distress, and medical
23  expenses, on the basis that Plaintiff has already settled these claims with Defendant in a
24  proceeding before the Commission.  (Def.'s Mot. for Summ. J. at 1.)

25  Defendant has also requested the certification of two questions to the Arizona
26  Supreme Court: (1) "Whether Plaintiff Jim Cano, as a 'non-insured' under the Zurich's
27  employer liability policy in question, can bring a common law bad faith action against
28  Defendant directly or as a third-party beneficiary of that policy"; and (2) "Whether Plaintiff

1   Jim Cano can seek damages for pain and suffering or mental/emotional distress arising from

2   industrial injuries for which he sought worker's compensation benefits in proceedings before

3   the Industrial Commission of Arizona, and for which he entered into a compromise and

4   settlement agreement."   (Def.'s Mot. for Certification of Questions of Law to Arizona

5   Supreme Court ("Def.'s Mot. for Certification") at 1-2.)

6   **II.   LEGAL STANDARDS AND ANALYSIS**

7       **A.   Motion for Summary Judgment**

8       Summary judgment is appropriately granted when there are no genuine issues of

9   material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

10   P. 56(c).  The initial burden is on the moving party to show an absence of genuine issues of

11   material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party meets

12   its initial burden, then the non-moving party must set forth specific facts showing a genuine

13   issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  In deciding

14   a motion for summary judgment, the Court views the evidence of the non-movant in the light

15   most favorable to that party, and all justifiable inferences are to be drawn in its favor.

16   *Anderson,* 477 U.S. at 255.

17       In Arizona, "there is a legal duty implied in an insurance contract that the insurance

18   company must act in good faith in dealing with its insured on a claim, and a violation of that

19   duty of good faith is a tort."  *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981).

20   To succeed on a claim for bad faith, an intentional tort, "a plaintiff must show the absence

21   of a reasonable basis for denying benefits of the policy and the defendant's knowledge or

22   reckless disregard of the lack of a reasonable basis for denying the claim."  *Id.  Accord*

23   *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000).

24           **1.   The Policy Language**

25       The policy at issue in this case begins with a "General Section" that states in

26   paragraph A: "This . . . policy is a contract of insurance between you (the employer named

27   in item 1 of the Information Page) and us (the insurer named on the Information Page)."

28

1   (DSOF, Ex. 1 ("Zurich Policy") at $6^2$.)  The employer named in item 1 of the Information

2   Page is Phelps Dodge and references "Endorsement U-WC-321-A," which lists a series of

3   Phelps Dodge companies under "The Owner Group" and "Approved Contractors and

4   Subcontractors," of which Bowen is included. (Zurich Policy, at 2-3; DSOF ¶ 2.) Paragraph

5   B of the General Section is entitled, "Who Is Insured," and it states, "You are insured if you

6   are an employer named in item 1 of the Information Page."  (Zurich Policy, at 6.)

7          Part One of the Zurich Policy provides workers' compensation insurance coverage for

8   "bodily injury by accident or bodily injury by disease" occurring during the policy period.

9   (Zurich Policy, at 6.)   The policy states:

10          **B.     We Will Pay**

11                 We will pay promptly when due the benefits required of you by the workers'

12                 compensation law.

13          **C.     We Will Defend**

14                 We have the right and duty to defend at our expense any claim, proceeding or

15                 suit against you for benefits payable by this insurance.  We have the right to

16                 investigate and settle these claims, proceedings or suits.

17          . . . .

18   (Zurich Policy, at 6-7.)

19          **2.     Plaintiff's Standing Under the Zurich Policy**

20          Defendant argues first that Plaintiff cannot assert a common law claim for bad faith

21   because "Plaintiff is not an insured on Zurich's policy, nor an assignee of Zurich's insured"

22   and is "a stranger to the Phelps Dodge/Bowen policy . . . ."  (Def.'s Mot. for Summ. J. at 1.)

23   Defendant asserts, in essence, that because the Zurich Policy does not state that the carrier

24   shall be directly liable to the employee, then Plaintiff's only remedy is within the Arizona

25

26

27          [2]The page numbers begin with the first page of Exhibit 1, not the numbers at the

28   bottom of the insurance policy.

Workers' Compensation Act.[3]  (Def.'s Mot. for Summ. J. at 6, citing A.R.S. § 23-963.)  As support for this argument, Defendant cites *Franks v. United States Fidelity & Guaranty Co.*, 718 P.2d 193 (Ariz. App. 1985).

*Franks*, though, is of little help to Defendant.  In *Franks*, the court considered "whether a cause of action for bad faith is barred by the exclusive jurisdiction of the Workers' Compensation Act remedy." *Id.* at 196-97.  The court answered in the negative, recognizing that "bad faith by a carrier in the handling of a workers' compensation claim does not arise out of and in the course of employment" and so the exclusive remedy provision of the Workers' Compensation Act "does not apply." *Id.* at 198.  The court held, "A claim by an injured employee against the workers' compensation carrier is a first-party claim, and the *Noble* elements of bad faith must be met." *Id.* at 197 (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1272 (Colo. 1985)).

Subsequent Arizona workers' compensation cases have followed *Franks* and allowed an injured worker to bring a common law bad faith action against a workers' compensation insurance carrier.  *See Boy v. Fremont Indem. Co.*, 742 P.2d 835 (Ariz. App. 1987) ("The superior court erred in dismissing on the grounds that [the employee] was not in privity of contract with [the insurance carrier]."); *Hayes v. Cont'l Ins. Co.*, 872 P.2d 668 (Ariz. 1994) (holding that the recent change in Arizona's workers compensation statute at A.R.S. § 23-930, which gave the Commission exclusive jurisdiction over statutory bad faith claims, did not prevent an injured worker from bringing a common law bad faith claim against the insurance carrier as recognized in *Boy* and *Franks*); *Rowland v. Great States Ins. Co.*, 20

---

[3]Plaintiff argues that the Policy does contain "an intention to directly benefit the injured employee" within paragraph H.3 of Part One of the Policy.  (Pl.'s Resp. at 11-12.) Paragraph H.3 says that where "required by law," Defendant is "directly and primarily liable to any person entitled to the benefits payable by this insurance."  Defendant argues that because A.R.S. § 23-963 does not require such language to be included in a worker's compensation policy in Arizona, then that language "is not a part of Zurich's policy." (Def.'s Reply at 6.)  It is debatable what law the Policy is referring to when it says "required by law"; however, because the Court concludes that Plaintiff may assert a bad faith claim under Arizona law, it need not decide this issue.

1    P.3d 1158 (Ariz. App. 2001) (holding that the common law cause of action for bad faith

2    extends to workers' compensation insurers and that "[i]t is undisputed that [the employee]

3    was a third-party beneficiary of the worker's compensation insurance contract between his

4    employer and [the carrier].")

5        Defendant attempts to counter these Arizona cases following the *Franks* precedent by

6    focusing on the Colorado case cited by the *Franks* court.  (Def.'s Mot. for Summ. J. at 6.)

7    In Colorado, the state workers' compensation act required every workers' compensation

8    policy to "contain a clause to the effect that the insurance carrier shall be directly and

9    primarily liable to the employee," thus allowing the "employee [to] stand[] in the same

10   position as an insured in a private insurance contract." *Savio*, 706 P.2d at 1272 (citing § 8-

11   44-105, 3 C.R.S. (1973)).  Defendant argues, "This is significant because Arizona's Workers'

12   Compensation Act that applies to this action, unlike Colorado's, does *not* require Zurich's

13   policy to contain a clause that Zurich is primarily or directly liable to injured employees."

14   (Def.'s Mot. for Summ J. at 6, citing A.R.S. § 23-963) (emphasis in original.)  The *Franks*

15   court, though, never said that the policy at issue contained language to the effect that the

16   carrier is directly liable to the employee; Defendant here merely argues that the policy at

17   issue in *Franks* "apparently" contained such a clause.[4]  (Def.'s Reply at 2.)  The Court will

18   not infer that the policy at issue in *Franks* contained language similar to the policy at issue

19   in *Savio* when the *Franks* court never even stated the policy's terms.

20       Defendant also argues that the "passing references" to *Franks* made by the courts in

21   *Rowland*, *Boy* and *Hayes* "have no precedential value for the issue presented by Zurich

22   because these issues were either assumed or not decided."  (Def.'s Reply at 5.)  The Court is

23   not persuaded by Defendant's argument.  All three cases–*Rowland*, *Boy* and *Hayes*– state that

24   _____

25       [4]Also, during oral argument, Defendant asserted that "the policy in the *Franks* case
     was of the nature of a first-party policy like a medical policy.  Zurich's policy is a liability
26   policy like an auto policy," which "protects its insured's liability to the injured claimant" and
     does not make "the injured claimant a third party beneficiary."  (Tr. 7:1-9.)  Defendant,
27   however, has not cited any language from the policy at issue in *Franks* and appears to assume
     that it differs from the policy Zurich issued to Phelps Dodge.
28

1    an employee may assert a bad faith claim against the employer's insurance carrier, and the

2    Court finds nothing to distinguish this case from those Arizona precedents.  The other

3    insurance cases cited by Defendant in its motion are inapposite because they are not workers

4    compensation cases.

5        The Court finds that Plaintiff has standing under Arizona law to bring a bad faith

6    claim against Defendant.  Therefore, Defendant's Motion for Summary Judgment is denied.

7        **B.    Alternative Motion to Dismiss**

8        Defendant has alternatively moved to dismiss claims by Plaintiff that the Commission

9    has "already decided" or "were subject to decision" by the Commission.  (Def.'s Mot. for

10   Summ. J. at 14.)  Defendant asserts that because Plaintiff "sought workers' compensation

11   benefits for medical expenses and income losses allegedly arising for injury to his knee,

12   resulting RSD and mental distress," any bad faith claim by Plaintiff is limited "to those

13   damages which are above and beyond the benefits which could have been available to him

14   under the compensation statutes.  Those damages would only potentially include damages

15   for pain and suffering."  (Def.'s Mot. for Summ. J. at 15,17.)

16       Plaintiff counters that he is not making a "claim for income loss and medical expenses

17   in this insurance bad faith lawsuit" and there is no dispute in that regard.[5]  (Pl.'s Resp. at 13.)

18   Rather, Plaintiff argues that his claim for psychiatric or mental distress resulting from

19   Zurich's alleged bad faith conduct is distinct from any claims stemming from his injury.

20   (Pl.'s Resp. at 13.)

21       In addition, Plaintiff argues that although his treatment for depression since his injury

22   was discussed in the case before the Commission, it was "not considered to be part of the

23   basis for the disability impairment rating agreed upon by the parties," and that the Settlement

24   specifically states that the depression "has not been established as an industrial liability" and

25

---

26       [5]As Defendant notes, Plaintiff appears to have conceded any claims for lost income
     and medical expenses, even though Plaintiff's Initial and Fourth Disclosure Statements
27   asserted claims for income loss and medical expenses.  (Def.'s Reply at 9-10; Def.'s
     Additional Statement of Facts, Exs. 5-6.)
28

1    will be "entitled to res judicata/claim preclusion effect on the issue of whether [Plaintiff's]

2    current major depressive disorder is an industrial liability." (Pl.'s Resp. at 13, citing

3    Settlement, at 7.) The Settlement goes on to say that Plaintiff "further agrees that this

4    Compromise and Settlement Agreement will be entitled to res judicata and claimed [sic]

5    preclusion effect on the issues of whether [plaintiff's] residuals[6] to his right lower extremity

6    should be compensated for on an unscheduled basis." (DSOF, Ex. 3 at 7.)

7        The Court agrees with Plaintiff that his compensable claims and damages in the

8    workers' compensation context are separate from an injury caused by an insurer's bad faith

9    handling of the claim. As the *Franks* court noted, "The injury that occurs as a result of the

10   tort of bad faith is a separate and distinct injury from the original industrial injury to the

11   worker giving rise to the election of remedy under compensation law. The injury resulting

12   from the intentional tort of bad faith is not compensable under the worker's compensation

13   scheme because it does not arise out of or in the course of employment." *Franks*, 718 P.2d

14   at 201. Thus, while the issue of whether Plaintiff's current major depressive disorder is an

15   industrial liability is precluded by the parties' Settlement, whether the depression and other

16   emotional distress stem from Defendant's alleged bad faith handling of Plaintiff's claim is not

17   precluded by the Settlement.

18        Defendant argues that because Plaintiff asserted RSD in his claim before the

19   Commission and because the parties reached a Settlement, then Plaintiff "cannot make a

20   claim for pain and suffering arising from an RSD condition for purposes of this bad faith

21   case." (Def.'s Reply at 11.) Plaintiff's claim, though, is that his RSD was either caused by

22   or exacerbated by the delay in receiving appropriate treatment for his injury due to

23   Defendant's alleged bad faith handling of his claim. While the Settlement includes the

24   parties' representations related to the RSD and an agreement that "the residuals from the

25   meniscectomy and his [RSD] [are] confined to his right lower extremity," it makes no

26

27       [6]Earlier on page 7, the Settlement uses the phrase "residuals from the meniscectomy
and his reflex sympathetic dystrophy," and the Court assumes that the reference to
28   "residuals" later on that same page refers to the same thing (i.e., the meniscectomy and RSD).

1   representations that the RSD was the result of delay in treatment or Defendant's alleged bad

2   faith in handling Plaintiff's claim.  Therefore, Defendant's alternative motion to dismiss is

3   denied.[7]

4            **C.     Motion for Certification of Questions of Law**

5            Defendant has asked this Court to certify two questions of law to the Arizona Supreme

6   Court.  The Arizona Supreme Court "may answer questions of law certified to it by . . . a

7   United States district court . . . if there are involved in any proceedings before the certifying

8   court questions of law of this state which may be determinative of the cause then pending in

9   the certifying court and as to which it appears to the certifying court there is no controlling

10  precedent in the decisions of the supreme court and the intermediate appellate courts of this

11  state."  A.R.S. § 12-1861.

12           Here, there is controlling precedent for both questions that Defendant is asking to be

13  certified to the Arizona Supreme Court.  *See* discussion *infra* Parts IIB & C.  Therefore,

14  Defendant's motion is denied.

15           **IT IS ORDERED** denying Defendant's Motion for Summary Judgment (Doc. 65).

16           **IT IS FURTHER ORDERED** denying Defendant's Motion for Certification of

17  Questions of Law to the Arizona Supreme Court (Doc. 94).

18           DATED this 27th day of June, 2006.

19

20

21  _____

22           Susan R. Bolton
         United States District Judge

23

24      [7]Defendant also argues that the doctrines of res judicata, collateral estoppel and accord
and satisfaction "bar any claims presented or which could have been presented by [Plaintiff]

25  in the past proceedings with the Industrial Commission."  (Def.'s Mot. for Summ. J. at 14.)
To the extent Plaintiff is making any claims for lost income or medical expenses that were

26  covered in the Settlement agreement, those claims are barred.  However, claims related to
whether Plaintiff's RSD was caused by a delay in treatment due to Defendant's alleged bad

27  faith in handling his claim are not barred by the doctrines of res judicata, collateral estoppel

28  or accord and satisfaction.